UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
SERGEI CHEPILKO,
          Plaintiff,

  -against-

THE CITY OF NEW YORK, NYPD OFFICER YI CHEN,
NYPD OFFICER JAMES FARAH, AND SGT. SEAN
DONOHUE

          Defendants.
-------------------------------------------------------------------- X

NO. 11-CV- 2878
(ARR)(LB)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

In the instant action, plaintiff, Sergei Chepilko, brings claims under 42 U.S.C. § 1983 for alleged violations of his constitutional rights on June 15, 2008, and August 7, 2010. Now before the court is defendants' motion to dismiss. For the reasons set forth below, defendant's motion to dismiss is granted.

## I. Background

### A. Previous Litigation History

On January 11, 2010, plaintiff initiated a lawsuit against the City of New York and Police Officer Diaz, alleging that on November 30, 2006, Diaz issued plaintiff a "false and baseless summons" for obstructing pedestrian traffic in violation of plaintiff's constitutional rights under the First, Fourth and Fourteenth Amendments. Chepilko v. City of New York, No. 10-CV-180-DLC (S.D.N.Y. 2010) ("Chepilko I"). According to the complaint, plaintiff received the summons while lawfully advertising as a photographer for hire on West 50th Street between Fifth and Sixth Avenues in Manhattan. Plaintiff also sought to recover against the City of New York for failure to train and supervise its employees regarding plaintiff's constitutional rights.

On April 7, 2010, plaintiff filed another lawsuit against the City of New York, Parks

On April 7, 2010, plaintiff filed another lawsuit against the City of New York, Parks Enforcement Officer Moylett, Police Officer Abreu, and Lieutenant Rodriguez, this time alleging that Officer Moylett and Lieutenant Rodriguez harassed, threatened, and temporarily detained him for lawfully participating in an anti-war rally on November 5, 2006, on West 69th Street and Central Park West in Manhattan. Chepilko v. City of New York, Dkt. No. 10-CV-02968 (S.D.N.Y. 2010) ("Chepilko II"). The complaint claimed that as a result of the officers' actions, Mr. Chepilko suffered emotional distress which caused him to have high blood pressure.

Both lawsuits were ultimately dismissed pursuant to separate settlement agreements. Chepilko I settled on December 9, 2010, when the City of New York agreed to pay plaintiff $5,000, and plaintiff agreed

> to dismissal of all the claims against the defendants and to release the defendant, the City of New York, and any present or former employees and agents of the City of New York or any agency thereof, from any and all liability, claims, or rights of action which were *or could have been alleged in this action*, including claims for costs, expenses, and attorneys' fees.

Stipulation of Settlement and Order of Dismissal dated Dec. 9, 2010, annexed as Ex. C to Declaration of John Schowengerdt ("Schowengerdt Decl.") (emphasis added).

Chepilko II settled on April 28, 2011, for $500, and contained the identical release of liability. Stipulation of Settlement and Order of Dismissal dated Apr. 28, 2011, annexed as Ex. F to Schowengerdt Decl.

B. The Instant Complaint

Plaintiff brought the instant action on June 14, 2011, alleging two separate incidents of police misconduct. The complaint first alleges that on June 15, 2008, Mr. Chepilko was advertising digital photography services near West 12th Street in Brooklyn, New York, when Sergeant Donohue and Officer Chen issued him a criminal court summons because he was an

2

"unlicensed general vendor." The complaint further alleges that on August 7, 2010, Chepilko was again advertising photography services in the vicinity of Surf Avenue between West 11th and West 12th Streets in Brooklyn when Officers Farah and Chen requested his license and threatened to arrest him. Liberally construing the *pro se* complaint, plaintiff now brings claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution, and free speech retaliation in violation of his rights under the First, Fourth, and Fourteenth Amendments. Plaintiff also claims that the City of New York maintained a policy or custom of harassing and falsely arresting expressive street vendors causing the denial of plaintiff's constitutional rights.

## II. Discussion

A. <u>Legal Standard</u>

Under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and must also draw all reasonable inferences in favor of the plaintiff. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam); <u>Freedom Holdings, Inc. v. Spitzer</u>, 363 F.3d 149, 151 (2d Cir. 2004). It is axiomatic that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys and the court is required to read the plaintiff's *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007); <u>Hughes v. Rowe</u>, 449 U.S. 5, 9 (1980); <u>Sealed Plaintiff v. Sealed Defendant #1</u>, 537 F.3d 185, 191-93 (2d Cir. 2008). The complaint's allegations "must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Only a "plausible claim for relief survives a motion to dismiss." <u>LaFaro v. New York Cardiothoracic Group, PLLC</u>, 570 F.3d 471, 476 (2d Cir. 2009). Thus courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>,

129 S.Ct. 1937, 1949-50 (2009) (citation and internal quotation marks omitted).

In evaluating the sufficiency of a complaint when determining a Rule 12(b)(6) motion to dismiss, the court is generally restricted to the facts and allegations contained in the "four corners" of the complaint. The court is also permitted to look to public records, however, including those filed with the court. See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) (affirming that a court may look at other complaints filed with the state court); Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991) (in a Rule 12(b)(6) motion, affirming that a court may review a company's public SEC filings in a case alleging securities fraud). Consequently, in evaluating the merits of defendant's Rule 12(b)(6) motion, the court may take judicial notice of documents publicly filed in Chepilko I and Chepilko II.

Defendants argue that the general releases included in the Chepilko I and Chepilko II settlement agreements are broad enough to cover all liability arising out of the incidents alleged in the instant dispute. Because the court finds that the general release in Chepilko I alone precludes the instant action, the court need not reach the issue of whether the release in Chepilko II would also bar plaintiff's claims.[1]

B. The Chepilko I Release

Settlement agreements and releases are contracts, and are thus to be construed according to general principles of contract law. See, e.g., Collins v. Harrison-Bode, 303 F.3d 429, 433 (2d Cir. 2002); Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999). Notwithstanding one party's subjective understanding, a court will not look beyond the "four corners" of the agreement where the language of the contract is clear and unambiguous. See,

---

[1] It is also unclear whether the court can even consider the settlement agreement in Chepilko II in ruling on the instant motion because the settlement agreement in the Chepilko II has never been publicly filed with the court. See Docket, Chepilko v. City of New York, No. 10-cv-2968 (NRB) (S.D.N.Y. 2010).

4

e.g., R/S Assocs. v. New York Job Dev. Auth., 98 N.Y.2d 29, 32-33 (2002); W.W.W. Assocs. v. Giancontieri, 77 N.Y.2d 157, 162 (1990).

The clause at issue here is clear and unambiguous. The agreement releases all defendants, including the "City of New York . . . and any present or former employees and agents of the City of New York or any agency thereof, from any . . . claims . . . which were or could have been alleged in this action." Contrary to plaintiff's position that he did not believe the Chepilko I settlement would affect his rights to file lawsuits arising out of other incidents, the release did not merely dispose of the incident alleged in the Chepilko I complaint, but also released defendants from any claims that *could* have been brought in that litigation. The dispositive question to be resolved, therefore, is whether plaintiff could have brought the claims alleged in the instant complaint in the Chepilko I action. Because I find that he could have done so, plaintiff's claims are dismissed.

Whether plaintiff may join one or more claims against a common defendant, or join additional individual defendants in one lawsuit, is governed by Federal Rules of Civil Procedure 18 and 20. Under Rule 18(a), a "party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Plaintiff named the City of New York as a defendant in both Chepilko I and the instant action. In both actions, he asserted against the City a claim of municipal liability under the framework laid out by the Supreme Court in Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). Under Rule 18(a), plaintiff therefore could have brought all of his claims against the City of New York in the Chepilko I litigation prior to the date of the settlement of that suit.[2]

---

[2] Indeed, evidence of the claims asserted in this suit would have been relevant, admissible, and highly probative of the merits of the Monell claim asserted in Chepilko I. In order to impose § 1983 liability on a municipality for the

The plaintiff could also have joined the claims against the different individual police officers involved in the three separate incidents. Under Rule 20(a)(2), a plaintiff may join additional defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

The two incidents underlying the instant complaint and the incident in Chepilko I constitute a "series of transactions or occurrences" under Rule 20(a)(2)(A). While there is no rigid rule as to what comprises the same series of transactions, "the Rule's [Fed. R. Civ. P. 20(a)(2)] requirements are to be liberally interpreted." City of New York v. Joseph L. Balkan, Inc., 656 F. Supp. 536, 549 (E.D.N.Y. 1987) (permitting joinder of the city's claims against multiple contractor defendants, all of whom were alleged to have separately bribed the city's sewer inspectors, because the alleged acts were a series of occurrences of similar type and purpose). The incident in Chepilko I and the two incidents alleged in the instant complaint are substantially similar in type and purpose to comprise a "series of transactions." All three incidents involve the City of New York and individual employees of the New York Police Department and a claim that plaintiff was subjected to false arrest, malicious prosecution, or retaliation for vending expressive art on public property in alleged violation of plaintiff's rights under the First, Fourth and Fourteenth Amendments. Moreover, plaintiff's claims are linked by plaintiff's identical

---

acts of its employees, a plaintiff must plead and prove (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) the denial of a constitutional right. Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). "A plaintiff may prove a municipal policy or custom by showing that: (i) the employees' unconstitutional acts are officially sanctioned or ordered by the municipality; (ii) the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (iii) the unconstitutional acts were by individuals with final policymaking authority." Porter v. City of New York, No. 03-cv-6463, 2007 WL 1791149, at *7 (E.D.N.Y. June 19, 2007) (internal quotation marks omitted) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)). The two incidents underlying the instant claims would have aided plaintiff in demonstrating a "widespread practice" constituting an unconstitutional municipal policy.

claim against the City of New York: that the City has a policy or custom of unlawfully harassing and/or arresting vendors of expressive art on public property.

Permissive joinder is to be broadly granted where it is appropriate and will logically conserve judicial and litigant resources. See United Mine Workers v. Gibbs, 383 U.S. 715, 724 (1966). ("Under the [Federal Rules of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged.") Despite minor differences in the facts underlying Chepilko I and those alleged in the instant complaint—e.g., that plaintiff was arrested for obstructing pedestrian traffic in Chepilko I while plaintiff was arrested for unlicensed vending on June 15, 2008—the cases involve common parties (the City), common issues of fact (alleged police interference with plaintiff's rights to advertise his digital photography business in public areas), and identical issues of law (whether defendants could lawfully stop and/or arrest plaintiff for advertising his photography and whether the City has an unconstitutional policy or custom that violated plaintiff's rights). Where the incidents involved such similar circumstances, there is no doubt that plaintiff could have joined the claims now alleged with the Chepilko I action. See, e.g., Tromp v. City of New York, 2012 U.S. App. LEXIS 4823 (2d Cir. 2012) (interpreting release language identical to that in the instant case and finding plaintiff's claim barred because plaintiff could have joined separate incidents of false arrest in a single suit) (citing Order of Dismissal, Gittens v. City of New York, Dkt. No. 10-8502 (S.D.N.Y. May 11, 2011), ECF No. 13 (interpreting identical release language and finding that similar false arrest claims, also linked by common Monell claim against the City of New York, could have been joined in the same action and were thus barred by the settlement agreement)).

Accordingly, I find that plaintiff could have brought the claims alleged in the instant

complaint in the Chepilko I action.[3] Alternatively, plaintiff could have demanded a different formulation of the Chepilko I settlement agreement in order to preserve his claims. Because plaintiff chose neither option, the plain language of the release bars him from asserting the claims advanced in this action.[4]

### III. Conclusion

Because the settlement agreement in plaintiff's prior lawsuit released the defendants from plaintiff's claims in the instant action, defendant's motion to dismiss plaintiff's complaint is granted. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

/Signed by Judge Ross/
_____
Allyne R. Ross
United States District Judge

Dated:	July 6, 2012
	Brooklyn, New York

---

[3] That the August 7, 2010 incident succeeded the filing date of the Chepilko I complaint is of no moment. Under Fed. R. Civ. P. 15(a), plaintiff could have moved to amend his complaint. Because the August 7, 2010 incident occurred approximately seven months after the Chepilko I complaint was filed, the amendment would have required either the opposing party's written consent or this court's leave. Such leave, however, is to be given "freely…when justice so requires." Fed. R. Civ. P. 15(a). Given the identity of the parties and the similarity of the claims, plaintiff's application for leave to amend his complaint would have been granted.

[4] Plaintiff, though proceeding *pro se*, is no stranger to federal court and the Federal Rules of Civil Procedure. See Chepilko v. Central Amusement Int'l., LLC, No. 11-CV-04273 (E.D.N.Y. 2011); Chepilko v. City of New York, No. 10-CV-02968 (S.D.N.Y. 2010); Chepilko v. City of New York, No. 10-CV-00180 (S.D.N.Y. 2010); Chepilko v. City of Atlantic City, No. 09-CV-01807 (E.D.N.Y. 2009); Chepilko v. Cigna Group Ins., No. 08-CV-04033 (S.D.N.Y. 2008); Chepilko v. Cornell University, No. 07-CV-04088 (E.D.N.Y. 2007); Chepilko v. Merck & Co., Inc., No. 07-CV-04098 (E.D.N.Y. 2007); Chepilko v. City of New York, No. 07-CV-00743 (S.D.N.Y. 2007); Chepilko v. City of New York, No. 06-CV-05404 (E.D.N.Y. 2006); Chepilko v. Major, No. 06-CV-05491 (E.D.N.Y. 2006); Chepilko v. City of New York, No. 05-CV-03541 (E.D.N.Y. 2005). Indeed, plaintiff's familiarity with the joinder rules is amply demonstrated in the instant case: plaintiff's instant complaint properly joins claims arising out of separate incidents more than two years apart.

SERVICE LIST:

**Plaintiff:**

Sergei Chepilko
501 Surf Avenue
Apt. 13-A
Brooklyn, NY 11224